UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| **MICHAEL P. BIANCE,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 2:11-CV-429-NT |
| | ) | |
| **WILLIAM T. LEMIEUX, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON MOTION TO INTERVENE

This case involves Plaintiff Michael P. Biance's attempt to collect from Defendant William T. Lemieux personally a debt which was owed by a limited liability company, SuperPlow, LLC, ("**SuperPlow**") of which the Defendant was a member and manager. Before the Court is SuperPlow's motion to intervene in these proceedings. Because SuperPlow was dissolved and cancelled by the Defendant on December 29, 2010, its motion to intervene must be DENIED.

   I.   Background

In May, 2007, Plaintiff Michael P. Biance, owner and President of Driveway SuperPlow, Inc., entered into an asset purchase agreement with SuperPlow, which is a New Hampshire limited liability company. Under the terms of this agreement, the Plaintiff agreed to sell to SuperPlow his snowplow patent, customer list and advertising materials, goodwill, website, technical documentation and vendor lists, and two complete and fully-assembled snow plows. He also agreed to change the

1

name of his company from Driveway SuperPlow, Inc., which he had held since 1993, to another name not involving the word "SuperPlow", to enter into a non-competition agreement with SuperPlow and to provide up to 540 hours of consulting services relating to the design, manufacture, sale and distribution of the snow plows between May, 2007 and November, 2008. The total purchase price was $475,000, with $175,000 paid at closing. A promissory note in the amount of $300,000 from SuperPlow to the Plaintiff, representing the value the parties placed on the snowplow patent and secured by this patent and SuperPlow's other assets, was to be paid in ten annual installments of $42,713.25 each.

On May 8, 2007, the Plaintiff changed the name of his company from Driveway SuperPlow, Inc. to M&M Welding Repairs, Inc. According to a Decision and Order entered in New York, *Biance v. SuperPlow, LLC*, Index No.: 6730-10, RJI No.: 01-10-101912, (N.Y. Sup. Ct., February 4, 2011), SuperPlow made the payments due under the note in May, 2008 and May, 2009, but defaulted on the May, 2010 payment. Accordingly, on February 4, 2011, judgment in the total amount of $298,527.48 including costs, accrued interest, and attorney's fees was entered against SuperPlow.

The New York judgment was entered following a summary process under N.Y. CPLR § 3213 for actions based solely upon an instrument for the payment of money (*i.e.* collection actions). In such actions in New York, the plaintiff may serve its motion for summary judgment on the defendant in lieu of a complaint, and proceed to judgment following a hearing on the motion if the defendant fails to

provide a defense to payment on the instrument. According to McKinney's Consolidated Laws of N.Y. Ann., Practice Commentaries, § 3213:17:

> Since the purpose of CPLR 3213 is to give the plaintiff a quick route to judgment on the merits when she sues on an instrument or judgment, the existence of a claim by the defendant against the plaintiff that could not itself be brought under CPLR 3213 should not ordinarily hold the plaintiff up.
> If the claim arises out of the same transaction as that which founds the plaintiff's claim, however, and would be available as a defense to the plaintiff's claim had it been brought in conventional form, it may be used as such in the opposing papers…
> But even if a counterclaim arises out of the "same general transaction" as the main claim does, its interposition should not be allowed to impede P[laintiff]'s ride to summary judgment on the main claim in a CPLR 3213 case unless the counterclaim also amounts to "defense to the main claim, which it didn't do in *Harris v. Miller*, 136 A.D.2d 603, N.Y.S.2d 586 (2d Dep't 1988). In *Harris*, where the main claim was on a note concededly executed by D[efendant] to P[laintiff] and the counterclaims were for legal services, the main claim got summary judgment and the counterclaims were severed for pleading in a formal answer and for litigation in due course.

SuperPlow opposed summary judgment in the New York action on the ground that it had counterclaims against Biance that voided his claims and/or denied him the relief he was requesting. In particular, SuperPlow argued that the technical drawings it received from Biance were both incomplete and contained design defects that led to numerous manufacturing and customer difficulties. SuperPlow claimed that, in spite of owing 540 hours of consulting services to SuperPlow, Biance retired to Florida and ignored SuperPlow's communications and difficulties. As a result, SuperPlow claimed that it was fraudulently induced to enter into the purchase agreement with Biance, that there was a failure of consideration that voided the agreement and the accompanying note, and that

3

Biance breached various covenants and warranties in the agreement entitling SuperPlow to damages.

Whatever the merits of these claims, the New York court found that they did not constitute "a complete defense to payment on the note," and that summary judgment on the note was therefore appropriate. *Biance v. SuperPlow, LLC*, Index No.: 6730-10, RJI No.: 01-10-101912 at *3. In particular, the court found that Biance's purported failure to provide adequate documentation (most likely referring to the technical drawings) did not establish any fraudulent intent on Biance's part, nor establish a failure of consideration that would support rescission of the agreement. *Id.* at *2-3.

While this suit was pending in New York, on December 29, 2010 the members of SuperPlow voted to dissolve the company. They voted that LeMieux "will be responsible for winding-up as reasonably as possible per the terms of the LLC agreement." That same day, LeMieux filed the company's certificate of cancellation with the State of New Hampshire, effective on the date of filing.

On November 10, 2011, the Plaintiff brought the present action against the Defendant personally and doing business as "EZ Plow", claiming that: (1) the Defendant is responsible for failing to wind up SuperPlow's business properly under New Hampshire law, particularly because of SuperPlow's to notify the Plaintiff of its dissolution so as to give the Plaintiff an opportunity to enforce his judgment against the assets of the company, (2) the Defendant secreted SuperPlow's assets in Maine and continues to use them to his benefit (a claim under Maine's Fraudulent

Transfers Act), (3) the Defendant is both personally benefiting from the use of those assets and, with EZ Plow, holds successor liability for SuperPlow's debt, and (4) the Defendant is personally liable on SuperPlow's judgment debt due to his failure to observe the corporate formalities with that company.

## II. Discussion

On a timely motion to intervene pursuant to Fed. R. Civ. P. 24, the court must permit anyone to intervene who "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." It may also permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." *Id.* The Plaintiff does not dispute that the motion is timely or that SuperPlow's claims are related enough to this litigation that it should otherwise be allowed to intervene.

The Plaintiff, rather, claims that SuperPlow's intervention is prevented by (1) lack of corporate capacity to sue, (2) improper venue, and (3) *res judicata*.[1] The pertinent issues may be framed as:

- whether SuperPlow, LLC is a cognizable legal entity;

- If SuperPlow does exist, whether it nevertheless required by the parties' agreement to bring its claims against Biance in New York; and

- If SuperPlow exists and is not precluded by contract from bringing its claims in Maine, whether the New York judgment nevertheless *res judicata* regarding SuperPlow's claims against the Plaintiff and proposed counter-claim defendants.

---

[1] The Plaintiff also claims that neither his wife nor son can properly be joined as counterclaim defendants to SuperPlow's claims. The Court, however, addresses this issue in its related order on the Defendant's motion to add counterclaim defendants.

5

A. <u>SuperPlow LLC's legal status</u>

SuperPlow is not a cognizable legal entity. When the Defendant filed the company's certificate of cancellation on December 29, 2010, he ended the company's existence and along with it, any capacity on SuperPlow's part to sue or (with certain exceptions discussed below) be sued. SuperPlow argues that, because its claims against the Plaintiff have not yet been adjudicated, its existence cannot be at an end. In support of this argument, it points to cases from Delaware and New York in which courts have ordered the nullification of an LLC's certificate of cancellation for purposes of allowing claimants who had not received proper notice of the company's cancellation to proceed with *their* claims against the company. Under such circumstances presumably the resurrected LLC would be able to present any defenses or counterclaims.

This argument, however, ignores the fact that no claims are being asserted against SuperPlow in this case. Rather, SuperPlow is asking to insert itself into litigation against its former member and manager, Lemieux, because it contends that it has claims against the Plaintiff which can offset Lemieux's alleged personal responsibility for SuperPlow's debts. SuperPlow has failed to point to any authority that would allow SuperPlow to do this. The structure of New Hampshire's LLC statutes are such that, in the period between dissolution and cancellation, (the "winding-up" period), an LLC has the general ability to sue and be sued. *See* N.H. Stat. 304-C:56. However, this ability ends with the effective date of cancellation stated on the filed certificate of cancellation. *See* N.H. Stat. 304-C:12 (IV) ("A

6

limited liability company formed under this chapter shall be a separate legal entity, the existence of which as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation.") In addition to ending the LLC's legal existence, the certificate of cancellation has the effect of notifying the public at large that it no longer has capacity to transact business—thus, the end of its general ability to *be sued*. *See* N.H. Stat. 304-C:57.

SuperPlow points out that, under certain circumstances, creditors may still sue an LLC even after its certificate of cancellation has been filed. *See* N.H. Stat. 304-C:60 (allowing a known creditor to file suit against a defunct LLC within 90 days after receiving a notice of rejection of its claim) and 304-C:61 (allowing all other creditors to sue a defunct LLC within five years after the filing of the certificate of cancellation and publication in a newspaper of a notice of dissolution). The Court also assumes, without deciding, that once suit has been filed against an otherwise defunct LLC, it may bring any appropriate defenses and counterclaims against its creditor. However, no reasonable reading of these statutes would allow for an LLC that has chosen to dissolve and cancel itself to revive itself at any time so as to insert itself and any claims it might have had into third-party litigation. It was the Defendant's duty to wind up SuperPlow's affairs prior to the effective date of his certificate of cancellation, including liquidating all of its claims against third parties. *See* N.H. Stat. 304-C:53 ("A limited liability company administratively dissolved continues its existence, but may not carry on any business except that necessary to wind up and liquidate its business and affairs") and 304-C:56 (listing

7

the powers of a member / manager of a dissolved LLC, including "(a) prosecute and defend suits; (b) settle and close the business of the LLC; (c) dispose of and transfer the property of the LLC; d) discharge the liabilities of the LLC; and (e) distribute to the members any retaining assets of the LLC.") To the extent it did not do so prior to cancellation, it has no independent power to do so at this time.

### B. Assertion by SuperPlow of its claims in Maine

SuperPlow has indicated that it is currently attempting to obtain an order from a New Hampshire court nullifying its certificate of cancellation. The Court, therefore, finds it worthwhile as well as expedient to address the Plaintiff's other objections to SuperPlow's motion to intervene. While the Court will not stay these proceedings pending resolution of SuperPlow's efforts in New Hampshire, it will entertain a renewed motion to intervene should SuperPlow be able to resurrect its corporate existence.

If SuperPlow were still legally in existence, it would be able to bring its claims against the Plaintiff in this Court. The purchase and sale agreement contains a clause designating New York courts as the exclusive forum "[i]f any party sues another party in a suit under or relating to this Agreement." *Agreement Among Driveway Super Plow, Inc., SuperPlow, LLC, and Others Concerning Sale and Purchase of Assets and Related Matters, Section 19.4* ("**P&S Agreement**") (Doc. # 8-2). However, the P&S Agreement also contains a provision allowing suit "in a court of competent jurisdiction," "[i]f there is any dispute among the parties under or relating to this Agreement that they cannot resolve voluntarily." *Id.* at Section

19.14. This is not a case in which the Court can harmonize the provisions of the contract by interpreting a more specific provision as governing or limiting a more general one; these provisions are simply contradictory. If the parties intended to limit their claims to resolution in New York-based courts, their contract fails to adequately reflect that intent.

As asserted by the Plaintiff in the Complaint at ¶ 5, this Court has jurisdiction to hear his case pursuant to 28 U.S.C. § 1332(a)(1). If SuperPlow is able to revive its existence, it will be a New Hampshire limited liability company, thus maintaining complete diversity among the parties. Accordingly, this Court is a "court of competent jurisdiction" under the P&S Agreement.

### C. Res Judicata

SuperPlow's claims are also not barred by *res judicata*. It is unclear from the New York court's order whether SuperPlow's claims would have been allowed to proceed in the same case following judgment on the note (akin to a partial summary judgment), or whether SuperPlow would have needed to file a separate action to pursue its claims against the Plaintiff. It appears beyond doubt, however, given the structure of CPLR § 3213 and the treatment of those claims by the New York court, that SuperPlow's claims against Biance were not actually adjudicated. The New York court merely found that SuperPlow's counterclaims and defenses did not constitute a complete defense to the Plaintiff's action on the note, and therefore that they did not bar New York's summary proceeding on such claims.

Accordingly, SuperPlow, LLC's motion to intervene in this litigation is DENIED without prejudice.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of April, 2012.