## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL P. BIANCE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Docket no. 2:11-cv-0429-NT<br>WILLIAM T. LEMIEUX, et al., )<br>)<br>Defendants. ) | |

## OPINION AND ORDER ON MOTION
## FOR PARTIAL SUMMARY JUDGMENT

This case comes before the Court on Plaintiff Michael P. Biance's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, the Plaintiff's motion is **DENIED**.

### FACTUAL BACKGROUND

There are two sides to every story, and this case proves no exception. What can be stated without dispute is that, in 2007, the Defendant formed SuperPlow, LLC, a New Hampshire limited liability company ("**SuperPlow**"), and SuperPlow purchased assets of Plaintiff's business including a rear-mounted snowplow patent, equipment, plans, customer lists, etc. The total agreed-upon purchase price was $475,000, of which $175,000 was paid up front. SuperPlow signed a 10-year promissory note in favor of the Plaintiff for the remaining $300,000, (the "**Note**"). The Note was secured by the patent.

Payments were to be made annually, but in 2010, after two payments, SuperPlow made no further payment on the Note.[1] In the fall of 2010, Plaintiff brought suit against SuperPlow in New York to enforce the Note. On December 29, 2010, SuperPlow dissolved and filed a certificate of cancellation in New Hampshire. Although Defendant was aware of the New York suit, he did not notify Plaintiff of SuperPlow's dissolution. On February 8, 2011, Plaintiff obtained judgment against SuperPlow on the Note in the amount of $298,527.

From here, the parties' factual paths diverge. Following its dissolution and cancellation, SuperPlow's assets were either illegally distributed to other entities including Defendant's other business EZ-Plow, (*see* Plaintiff's Statement of Material Facts, ¶ 9 (Doc. # 22) (hereafter "**PSMF**")) or were held by Defendant for satisfaction of Plaintiff's judgment (*see* Defendant's Opposition to Plaintiff's Statement of Material Facts, ¶ 9 (Doc. # 27) (hereafter "**OSMF**") and Defendant's Statement of Additional Material Facts, ¶¶ 12-14 (Doc. # 28 (hereafter "**DSMF**")).

According to the Plaintiff, Defendant continued in 2011 with the business he purchased from the Plaintiff under the name "EZ Plow," an unincorporated business with a website that advertises for sale the "EZ-Plow: A rugged rear-mounted snowplow." PSMF, ¶ 9 and Exhibit E thereto. Plaintiff also contends that Defendant has made no assets of the business available to satisfy the judgment, and Plaintiff claims that, to date, the New York judgment remains entirely unsatisfied.

---

[1] For further details, see this Court's April 27, 2012 order on SuperPlow's motion to intervene (Doc. # 25).

Defendant contends that he has not used any of SuperPlow's assets, but rather, that SuperPlow "made adequate provision for the payment of [Plaintiff's] judgment under the Note," OSMF ¶ 9, in part by segregating and storing all of SuperPlow's tangible assets, DSMF ¶ 13, and in part by holding the original patent available to satisfy the judgment. DSMF ¶¶ 14-17 and 21. Defendant further claims that he designed the EZ-Plow himself, and that this rear-mounted snowplow uses "completely different structural components than the poorly conceived rear-mounted plow design SuperPlow purchased from [Plaintiff]." DSMF ¶ 25. Defendant contends, finally, that Plaintiff has refused to accept these assets in satisfaction of the New York judgment in favor of seeking monetary satisfaction from Defendant himself. DSMF ¶¶ 21-22.

## LEGAL STANDARD

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c).

At summary judgment, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Noonan v. Staples, Inc.,* 556 F.3d 20, 25 (1st Cir. 2009) (internal citations omitted). The Court reviews the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor. *See id.* Factual disputes which are irrelevant or unnecessary will not be considered. *See Anderson v. Liberty*

*Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To determine whether a dispute as to a material fact is genuine, the court must decide whether the "evidence is such that a reasonable [fact-finder] could return a verdict for the non-moving party." *Id.*

## DISCUSSION

In this suit, Plaintiff has brought claims against Defendant personally and doing business as EZ-Plow for violation of New Hampshire's LLC statutes, unjust enrichment, fraudulent transfer, and successor liability. In this motion for partial summary judgment, Plaintiff focuses solely on Defendant's failure under New Hampshire's LLC statutes to notify Plaintiff of SuperPlow's dissolution and to distribute SuperPlow's assets to Plaintiff following dissolution. Plaintiff contends that, as a consequence of these failures, Defendant must be held personally liable for the entire amount of Plaintiff's judgment against SuperPlow.

There are two provisions of New Hampshire's LLC statutes at issue in this claim: (1) its procedure for disposing of the claims of known creditors upon dissolution, *see* N.H. Rev. Stat. §§ 304-C:60, and (2) its requirement that a dissolved LLC distribute its assets to creditors in satisfaction of their claims prior to making any distributions to members. *See* N.H. Rev. Stat. §§ 304-C:58.

With respect to the first provision, Section 304-C:60 states in part:

Upon dissolution, a limited liability company may dispose of the known claims against it by filing a certificate of cancellation pursuant to RSA 304-C:59 and following the procedures described in this section.

4

The procedures set forth thereafter involve providing written notice to known creditors of the company's dissolution and an opportunity to make claims against the LLC. *Id.* Such claims are either barred in the first instance if not made within 120 days of notice, or barred thereafter if a creditor with a rejected claim fails to bring suit on its claim within ninety days after the date of rejection. *Id.* The claims of unknown creditors are barred five years after the company files its certificate of cancellation and publishes notice of its dissolution. N.H. Rev. Stat. § 304-C:61.

Defendant acknowledges that he did not provide Plaintiff, a known creditor, with notice of SuperPlow's dissolution in accordance with Section 304-C:60. However, he argues that this alone is no basis for imposing personal liability on him for the full amount of the New York judgment. The Court agrees. While it appears that Section 304-C:60 is designed to aid in the proper distribution of an LLC's assets, nothing in New Hampshire's LLC statutes creates a penalty[2] against LLC members for not following its creditor notice and claim provisions. Indeed, Section 304-C:60 indicates both that it is permissive, ("a limited liability company *may* dispose of the known claims against it…" (emphasis added)) and that its purpose is principally to provide a method for protecting members of a dissolved LLC against future claims after the LLC has been dissolved and cancelled. In particular, Section

---

[2] Defendant formed SuperPlow in 2007, and it was this entity that purchased Plaintiff's assets and signed a promissory note to pay for them. SuperPlow's note was not guaranteed personally by Defendant nor was it secured by Defendant's personal assets. Plaintiff's recourse for non-payment was solely to assets of the business including most significantly the snowplow patent. Plaintiff does not contend in this motion for partial summary judgment that SuperPlow was a sham entity, which is the generally-recognized way of asserting personal liability for what would otherwise be corporate debts. Accordingly, by asking for the Court to transfer a corporate debt to the Defendant personally, Plaintiff is asking the Court to impose a penalty on Defendant not otherwise contemplated by the parties' relationship.

304-C:60 speaks of "disposing of known claims" and of how claims become "barred" after the notice and claim procedures are followed.

Plaintiff's claim that an "incentive" is required to get LLC members to comply with this provision ignores the fact that those who fail to take advantage of Section 304-C:60 forego its protections. For example, if an LLC does not provide specific notice of its dissolution to creditors under Section 304-C:60, it and its former members are indefinitely exposed to outstanding creditor claims instead of limiting the claims period to 120 days. Defendant has apparently also foregone the limited protections afforded under Section 304-C:61, which provides a five-year statute of limitations on claims against the LLC or its former members.[3]  However, the mere fact that the Defendant did not take advantage of these statutory protections does not translate into automatic personal liability for the entire amount of SuperPlow's debts, and Plaintiff has provided no authority in support of such a remedy.[4]

---

[3]  This section, too, is permissive, stating that an LLC "may" publish notice of its dissolution. By following this section, an LLC and its former members limit future claims against both the LLC and its members to five years following notice and filing of its certificate of cancellation.

[4]  Plaintiff argues that *J&M Lumber and Const. Co., Inc. v. Smyjunas*, 20 A.3d 947 (N.H. 2011), supports his claim that an LLC member who improperly takes a distribution from a dissolved LLC may be held liable for the entire debt owed to unpaid creditors. Plaintiff submits both the original complaint in the *Smyjunas* case as well as the New Hampshire Superior Court decision from which appeal was made. Doc. # 22-10 and 22-11. These documents reveal only that an unpaid creditor (J&M) has a cause of action under New Hampshire's LLC statutes against an LLC member (Smyjunas) who distributes assets of the dissolved company to himself before satisfying debts owed by the company. J&M sought the full amount of its judgment against Smyjunas's former LLC and the jury awarded the full amount of J&M's judgment against Smyjunas personally. However, this judgment was a general verdict in J&M's favor based on submission to the jury of four separate counts all requesting the same total relief, including piercing the corporate veil, improper wind-up of the LLC, unjust enrichment, and breach of the duty of good faith and fair dealing. *See Smyjunas*, 20 A.3d at 952 & 959. There were thus at least two other bases for an award to J&M of the full amount of its judgment: (1) J&M may have proven that the LLC was a sham company, making Smyjunas personally liable for the sham company's debts, or (2) Smyjunas may have siphoned assets from the LLC that were equal or greater than the full amount of J&M's judgment, making him liable to disgorge what he took up to the amount of the judgment.

Regarding the second provision at issue, Section 304-C:58 prohibits distribution of the assets of a dissolved LLC to its members without first satisfying creditor claims. To the extent Defendant distributed assets to himself out of SuperPlow without first resolving outstanding claims against SuperPlow, he has violated New Hampshire law. It is clear that creditors may sue members for improper distributions during wind up, see *Smyjunas*, 20 A.3d at 959 (supporting the existence of a cause of action for improper wind-up under New Hampshire's LLC statutes), but it is not clear what the proper remedy is.

Again, the Plaintiff's request that automatic liability be imposed on Defendant for the total amount of SuperPlow's debts finds no support in New Hampshire's statutes or case law. Although the Defendant does not fall within the protections of Section 304-C:61 for claims made by unknown creditors, that statute authorizes suits against members to the extent of the assets distributed to the member during wind up. Thus, at a minimum, the remedy for a plaintiff who establishes a violation of Section 304-C:58 should allow creditors to reach any assets distributed to former members during the wind up. The New Hampshire LLC statutes do not support any greater remedy, and this Court will not fabricate one for a failure to follow the formalities of a corporate wind up. "A federal court sitting in diversity cannot be expected to create new doctrines expanding state law." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 401 (1st Cir. 2005). There are additional common law theories, including piercing the corporate veil and

fraudulent transfer, which may provide the Plaintiff with the additional relief he seeks.

## **CONCLUSION**

For the reasons stated, the Plaintiff's motion for partial summary judgment is DENIED.

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 2nd day of August, 2012.